IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| TERRY BARKER and CAROLYN BARKER,<br><br>                                 Plaintiffs,<br>v.<br><br>LAURA SAXMAN and MICHAEL SAXMAN,<br><br>                                 Defendants. | CASE NO.: 1:21-CV-014<br><br>**JURY TRIAL DEMANDED** |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

COME NOW Defendants Laura Saxman and Michael Saxman, by and through the law offices of BECKSTEDT & KUCZYNSKI, LLP, Carl A. Beckstedt III, Esq., and serve their Answer to Plaintiff's Complaint, in correspondingly numbered paragraphs, and their Affirmative Defenses and Counterclaim Against the Plaintiffs, as follows:

### ANSWER

1. The allegation calls for a legal conclusion to which no response is required. To the extent that a response is required, the allegation is denied.

2. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 and therefore deny same.

3. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 and therefore deny same.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

8. Defendants lack knowledge and information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 8 and therefore deny same.

9. Denied.

10. Denied.

## COUNT I

11. Defendants restate and incorporate their answers to paragraphs numbered 1 through 10 as though fully set forth herein.

12. Denied.

13. Denied.

14. Denied.

## COUNT II

15. Defendants restate and incorporate their answers to paragraphs numbered 1 through 14 as though fully set forth herein.

16. The allegation calls for a legal conclusion to which no response is required. To the extent that a response is required, the allegation is denied.

17. Denied.

## COUNT III

18. Defendants restate and incorporate their answers to paragraphs numbered 1 through 17 as though fully set forth herein.

19. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and therefore denies same.

20. Denied.

## COUNT IV

21. Defendants restate and incorporate their answers to paragraphs numbered 1 through

20 as though fully set forth herein.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

## ADDITIONAL DENIALS

1. Defendants deny each and every allegation in Plaintiffs' Complaint not heretofore expressly admitted or otherwise pleaded to in response.

2. Defendants deny that they are liable for any act or omission of any kind or nature whatsoever that would warrant the imposition of damages against them, as alleged, or at all.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Plaintiffs may be estopped by Plaintiffs' own improper conduct.

3. Plaintiffs' claims may be subject to an arbitration agreement.

4. The incident occurred without negligence on the part of these Defendants.

5. Any damages alleged in the Complaint, if any, may have been the proximate result of an unforeseeable intervening cause and/or superseding cause.

6. Plaintiffs may have been negligent in the performance of their duties so that such negligence was the sole proximate cause of any loss or damage alleged in the Complaint and, if not the sole cause, was a contributing cause to such a degree as to bar or diminish Plaintiffs' recovery against Defendants pursuant to provisions of 5 V.I.C. §1451 *et seq.*

7. To the extent Defendants' conduct was negligent, which is denied, such conduct was not the cause in fact or legal cause of any damages which may have been suffered by

Plaintiffs.

8.  Plaintiffs may have failed to mitigate their damages as required by law.

9.  To the extent Plaintiffs have mitigated their damages from collateral sources, any payments from collateral sources are claimed as a set off against any judgment the Plaintiffs may recover against the Defendants.

10. The injuries sustained by Plaintiffs as alleged in the Complaint may have been the direct and proximate result of Plaintiffs' willful, knowledgeable and voluntary assumption of the risk with respect to a situation Plaintiffs knew, or had reasonable cause to have known, may have been potentially hazardous and the risk of which Plaintiffs freely and voluntarily chose to encounter.

11. Any damages for future loss, which are denied, must be reduced to present value.

12. Plaintiffs' conduct may have been so reckless as to constitute a disregard of his or her own safety and he or she is, therefore, barred from recovery against Defendants.

13. Defendants reserve the right to amend to add any affirmative defense that becomes appropriate based on investigation and other discovery that may occur during the course of litigation.

WHEREFORE, Defendants demand judgment against Plaintiffs dismissing the Complaint, together with costs, attorneys' fees and such other and further relief as the Court deems just and appropriate.

## COUNTERCLAIM AGAINST PLAINTIFFS

Defendants/Counterclaimants, Laura Saxman and Michael Saxman, file this Counterclaim against Plaintiffs/Counter-Defendants Terry Barker and Carolyn Barker, and state:

## JURISDICTION AND PARTIES

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

2. Upon information and belief, Plaintiff Carolyn Barker is a resident citizen of the U.S. Virgin Islands.

3. Upon information and belief, Plaintiff Terry Barker is a resident citizen of the U.S. Virgin Islands

4. Defendant Michael Saxman is a resident citizen of the State of New York.

5. Defendant Laura Saxman is a resident citizen of the State of New York.

## **GENERAL ALLEGATIONS**

6. Defendants repeat and reallege all preceding paragraphs, which are incorporated herein by reference.

7. Plaintiffs in the above captioned matter have brought suit arising out of an alleged incident occurring on or about June 15, 2020, which is the subject of claims alleged against Defendants as stated and alleged in the Plaintiffs' Complaint, Docket No. 1-1, filed in the above captioned matter (the "Incident").

8. All allegations in the Plaintiffs' Complaint, are incorporated herein by reference.

9. Defendants deny any and all liability and responsibility for the acts as alleged in Plaintiffs' Complaint.

10. On or about June 15, 2020, the Plaintiffs Terry Barker and Carolyn Barker (collectively, the "Barkers") were the owners and residents of Unit H, Sweet Lime Villas, St. Croix, U.S. Virgin Islands.

11. On or about June 15, 2020, the Defendants Michael Saxman and Laura Saxman (collectively the "Saxmans") were the owners and residents of Unit F, Sweet Lime Villas, St. Croix, U.S. Virgin Islands.

5

12. At all times relevant to this matter, Plaintiff Carolyn Barker was a director and/or an officer of the Carambola Property Owners Association ("Association") which is the Master Association over the condominium sub-associations including Sweet Lime Villas, Saman Villas and Sweet Lime Village as well as single family homesites in Ginger Hills, Hibiscus Point, Carambola Crest and Prosperity Ridge.

13. As property owners of Sweet Lime Villas, the Barkers and the Saxmans were both members of the Association.

14. Plaintiffs had in their possession the email addresses for all the owners in the Association.

15. The Barkers owned a dog who, upon information and belief, is named Cooper.

16. The Saxmans owned two dogs: Henry, who was tan in color, and Dixie, who is black and white in color.

17. Neither of the Saxmans' two dogs are or were vicious or aggressive.

18. Following the Incident, the Saxmans promptly removed Henry from the premises and surrendered Henry for rabies testing and quarantine at Progressive Veterinary Hospital on St. Croix.

19. Henry tested negative for rabies and was quarantined for 10 days before ultimately being euthanized.

20. Plaintiffs learned on or about June 16, 2020, the day after the Incident, that Henry was removed from the Sweet Lime Villas premises to be quarantined and would not be returning to the property.

## COUNT I - DEFAMATION

21. Defendants repeat and reallege all preceding paragraphs, which are incorporated

herein by reference.

22. On or before June 20, 2020, but after the Incident, Plaintiffs authored and caused to be distributed via electronic mail (e-mail) to, upon information and belief, owners within the Association, an email about the June 15, 2020 Incident and the Defendants' dogs. *See* Barker Email, attached hereto as Exhibit 1 ("Barker Email").

23. The Barker Email contained several false, misleading and defamatory statements.

24. The Barker Email stated, in part, that, "Villa F owners have two dogs. The dog that attacked us is large, tan in color and vicious. Villa F also has another dog that is large and black and white in color. The black and white dog is aggressive…". Ex. 1.

25. The aforementioned statement is not true.

26. Henry did not attack the Barkers.

27. Henry was not vicious.

28. Dixie was not aggressive.

29. The Barker Email also stated, in part, that, "the attack dog was outside Villa F without a leash." Ex. 1.

30. The aforementioned statement is not true.

31. Henry was on a leash.

32. The Barker Email also stated, in part: "We are writing this note to warn all of you so that you will be able to protect yourselves and your pets and children." Ex. 1

33. Plaintiffs sent the so-called "warning," despite knowing that Henry had been permanently removed from the Association premises and quarantined. Accordingly, Plaintiffs intentionally, maliciously, unreasonably and unnecessarily sought to invoke fear among the other owners in the Association by indicating Henry was a threat even when the Plaintiffs knew that

7

Henry was quarantined at the veterinarian and would not be returning to the property.

34. Moreover, Plaintiffs intentionally omitted the Saxmans from the communication to prevent them from knowing that the Plaintiffs had sent the defamatory communication to the other owners.

35. The statements in the Barker Email and its untruths were intended to shame, intimidate, persecute, and humiliate the Saxmans.

36. The statements were designed to infer that the Saxmans were not law-abiding citizens.

37. The statements were intended as a tool to set the neighbors against the Saxmans.

38. The statement was intended as a retaliation against the Saxmans for the Incident.

39. As a direct and proximate result of the published false and defamatory statements contained in the Plaintiffs' letter, the Saxmans suffered physical injuries, severe injury to their reputation, humiliation, embarrassment, poor health, emotional and physical distress, and being forced to relocate from their unit at Sweet Lime Villas, and incur rental fees and to euthanize their beloved dog, Henry.

40. Defendants are entitled to compensation for their injuries.

## COUNT II – INVASION OF THE RIGHT OF PRIVACY (FALSE LIGHT)

41. Defendants repeat and reallege all preceding paragraphs, which are incorporated herein by reference.

42. Plaintiffs intentionally or recklessly gave publicity of the incident in such a manner that placed the Defendants before the community in a false light, to wit, as irresponsible and non-law-abiding citizens and thereby improperly invaded their privacy.

43. Plaintiffs knew that their statements in the Barker Email were untrue and/or acted

in such a reckless disregard as to the falsity of the publicized matter, that they knew or should have known that their publication of the Barker Email would place the Defendants in a false light in the community.

44. To the extent the statements made in the Barker Email were true, which is denied, the Barkers selectively printed true statements in a manner which created a false impression in the community that the Saxmans were not law-abiding citizens.

45. As a direct and proximate result of placing the Saxman's in a false light the Saxmans suffered physical injuries, severe injury to their reputation, humiliation, embarrassment, poor health, emotional and physical distress, and being forced to relocate from their unit at Sweet Lime Villas, incur additional rental charges and to euthanize their beloved dog, Henry.

46. Defendants are entitled to compensation for their injuries.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Defendants repeat and reallege all preceding paragraphs, which are incorporated herein by reference.

48. Plaintiffs intentionally or recklessly authored and distributed the aforementioned defamatory Barker Email amongst the Association owners and residents.

49. Plaintiffs' aforesaid actions were so extreme and outrageous as to transcend the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.

50. Plaintiffs' actions were the direct and proximate cause of the Defendants' emotional distress.

51. As a result of Plaintiffs' outrageous conduct, the Defendants suffered physical injuries, severe injury to their reputation, humiliation, embarrassment, poor health, emotional and physical distress, and being forced to relocate from their unit at Sweet Lime Villas, incur additional

rental charges and to euthanize their beloved dog, Henry.

52. Defendants are entitled to compensation for their injuries.

### COUNT IV - NEGLIGENCE

53. Defendants repeat and reallege all preceding paragraphs, which are incorporated herein by reference.

54. To the extent the Plaintiffs determined they would communicate to the owners in the Association regarding the Incident, Plaintiffs had a duty to use reasonable care in so communicating.

55. The Plaintiffs failed to portray the facts accurately and completely in their communication to the Association owners, including without limitation, omitting to tell the Association owners that Henry was on a leash and that Henry had been permanently removed from the Association premises the day after the Incident.

56. As a direct and proximate cause of the Plaintiffs' negligence in sending out a communication that was not accurate and complete, Defendants' suffered physical injuries, severe injury to their reputation, humiliation, embarrassment, poor health, emotional and physical distress, and being forced to relocate from their unit at Sweet Lime Villas and pay rental fees, and to euthanize their beloved dog, Henry.

57. Defendants are entitled to compensation for their injuries.

### NOTICE OF REQUEST FOR PUNITIVE DAMAGES

58. The publication of the aforementioned statements in the Barker Email amounts to outrageous and extreme behavior which transcends the bounds of decency so as to be regarded as *atrocious* and *intolerable* in a civilized society, especially given (1) the implication by the untrue statements that the Saxmans were people who freely disobeyed the law by allowing their dog to

run around unleashed (which is completely false), (2) that the Barker Email was sent to all the other owners in the Association behind the Saxmans' back, (3) the Barker Email was sent, in part, by Mrs. Barker who was an officer of the Association and (4) the Barker Email contained a warning regarding a dog that had been permanently removed from the premises as would be done by any law-abiding and responsible pet owner.

59. Defendant/Counterclaimants are entitled to punitive damages as a result of the conduct of the Plaintiff Barkers.

WHEREFORE, Defendants/Counterclaimants seek an award of compensatory, consequential, special and punitive damages, together with costs, attorneys' fees and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**Beckstedt & Kuczynski, LLP**
Attorneys for Defendants
2162 Church Street
Christiansted, VI 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
Carl@BeckstedtLaw.com

Dated: September 17, 2021        By:    s/ Carl A. Beckstedt III
Carl A. Beckstedt III, Esq.
Virgin Islands Bar No. 684